Filed 8/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MICHAEL CONYER, | B296738 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC718750) |
| v. | |
| HULA MEDIA SERVICES, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Steven J. Kleifield, Judge.  Reversed and remanded with directions.

Lewis Brisbois Bisgaard & Smith, John L. Barber, Jeffry A. Miller, Wendy S. Dowse and Rachel J. Lee for Defendants and Appellants.

Feldman Browne Olivares, Lee R. Feldman, Caroline Wolf; Law Offices of Craig T. Byrnes and Craig T. Byrnes for Plaintiff and Respondent.

_____

**SUMMARY**

An employee signed an acknowledgment of receipt of the employee handbook. In it, he agreed he was bound by the provisions of the handbook, and it was his responsibility to read and familiarize himself with all its provisions. The handbook contained an agreement to arbitrate disputes. The employer did not highlight or otherwise call the employee's attention to the arbitration clause.

We hold the employee demonstrated his assent to the arbitration clause by signing the acknowledgment, and the employer had no duty to call the arbitration agreement to the employee's attention. We further find that provisions in the arbitration clause concerning arbitrator's fees and costs and attorney fees are unenforceable, but they may be severed, and the rest of the agreement is enforceable.

Accordingly, we reverse the trial court order denying the employer's motion to compel arbitration.

**BACKGROUND**

**1. The Facts**

Plaintiff Michael Conyer began working for defendant Hula Media Services, LLC as a facility manager and senior engineer in January 2017. Hula Media is a corporation that provides postproduction technology and services for television and features throughout the United States.

When he was hired, plaintiff received a copy of defendant's employee handbook. At that time, the handbook did not have an arbitration clause. Plaintiff signed a "receipt and acknowledgment" of that handbook, stating he understood and agreed it was his responsibility to read it and that he was bound by its provisions.

In August and October 2017, plaintiff submitted written complaints to defendant's then-president, alleging sexual

2

harassment and retaliation by defendant's chief executive officer, Denine James-Nio, among other claims.

In November 2017, Tom Elias, a human resources consultant for a company that performs those functions for defendant, distributed copies of a revised employee handbook to all defendant's employees.

Plaintiff signed the "receipt and acknowledgment" page (the final page of the handbook) and returned it to Mr. Elias on November 7, 2017. Plaintiff does not remember signing the receipt and acknowledgment, but he does not deny the signature is his.

The language of the November 2017 receipt and acknowledgment of the handbook is identical to the language in plaintiff's acknowledgment of the original handbook. In pertinent part, both documents stated: "This is to acknowledge that I have received a copy of the Employee Handbook. This Handbook sets forth the terms and conditions of my employment as well as the rights, duties, responsibilities and obligations of my employment with the Company. I understand and agree that it is my responsibility to read and familiarize myself with all of the provisions of the Handbook. I further understand and agree that I am bound by the provisions of the Handbook. [¶] I understand the Company has the right to amend, modify, rescind, delete, supplement or add to the provisions of this Handbook, as it deems appropriate from time to time in its sole and absolute discretion."

The first four pages of the handbook contained the table of contents. The subheading "Arbitration" appeared under the heading "Communication and Problem Solving," on the first page of the table of contents, which indicated the arbitration provision was on page 15. On page 15, a paragraph headed "Arbitration" stated:

"Arbitration:  Mindful of the high cost of litigation, not only in dollars but time and energy as well, Hula Media Services, LLC intends to and [does] hereby establish a quick, final and binding out-of-court dispute[] resolution procedure to be followed in the unlikely event any controversy should arise out of or concerning your employment with Hula Media Services, LLC.  Accordingly, the parties do hereby covenant and agree as follows:  Any controversy, dispute, or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of your employment, including any claim based on contract, tort, or statute, shall be settled, at the request of any party to this employment relationship, by final and binding arbitration conducted at a location determined by an arbitrator in California administered by and in accordance with the then existing Rules of Practice and Procedure of Judicial Arbitration & Mediation Services, Inc. (JAMS), and judgment upon any award rendered by the arbitrator(s) may be entered by any state or federal court having jurisdiction thereof.  The arbitrator shall determine which is the prevailing party and shall include in the award that party's reasonable attorney fees and costs.  As soon as practicable after selection of the arbitrator, the arbitrator or his/her designated representative shall determine a reasonable estimate of anticipated fees and costs of the arbitrator, and render a statement to each party setting forth that party's pro rata share of said fees and costs.  Thereafter each party shall, within then [*sic*] (10) days of receipt of said statement, deposit said sum with the arbitrator.  Failure of any party to make such a deposit shall result in forfeiture by the non-depositing party of the right to prosecute or defend the claim, which is the subject of the arbitration, but shall not otherwise serve to abate, stay or suspend the arbitration proceedings."

4

On January 8, 2018, defendant terminated plaintiff's employment.

## 2.     The Litigation

In August 2018, plaintiff sued Hula Media and CEO Denine James-Nio (defendants), alleging sexual harassment and six other causes of action under the Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.), as well as a claim for failure to reimburse business expenses.

In November 2018, defendants filed a motion to compel arbitration.  A declaration from Mr. Elias stated he distributed the revised handbook to all employees.  "Along with all other employees, I instructed Plaintiff to review the Handbook which included the Arbitration Agreement and allowed him the opportunity to review it.  I also instructed Plaintiff to inform me if he had any concerns or questions regarding the materials.  Lastly, I instructed Plaintiff to return the signed 'Receipt and Acknowledgment' page of the Handbook to me so I could have a copy placed in his personnel file."  Plaintiff did so on November 7, 2017, and he did not contact Mr. Elias with any questions or concerns.

Defendants contended the Federal Arbitration Act (FAA, 9 U.S.C. § 1 et seq.) governs the agreement, because Hula Media provides postproduction technology services throughout California "as well as with other states throughout the country."  Plaintiff does not dispute the FAA governs the agreement.

In opposition to defendants' motion, plaintiff said he had not agreed to arbitrate.  His declaration stated he "never knew the Company had ever adopted any arbitration policy or revised its Handbook," and that during his employment, "I never received a copy of any revised version of the Employee Handbook and was not informed that there had been a revision to the Handbook."  Plaintiff stated that, "[c]onsidering how bad my employment

5

situation was at that time, and my recent internal complaints . . . I would not have agreed to sign an arbitration agreement in November 2017." He stated that Mr. Elias "never distributed a revised Employee Handbook to me, nor did he ever discuss a revised Handbook with me whatsoever."

Plaintiff's opposition argued that even if he had been given a copy, he would never have known that defendants put an arbitration clause in it "without notifying him whether and how the Handbook had been changed." Plaintiff also contended the arbitration agreement was unconscionable, because of the provisions requiring the employee to pay half the arbitrator's fees and costs within 10 days and mandating an award of attorney fees to the prevailing party.

### 3.     The Trial Court's Order

The trial court denied defendants' motion to compel arbitration. The court recognized that ordinarily, a party's failure to read a contract constitutes a lack of the reasonable diligence required of parties before they sign a contract. But the court found the evidence did not support any lack of reasonable diligence on plaintiff's part. The court observed the receipt and acknowledgment form plaintiff signed did not indicate the handbook now contained an arbitration agreement, "or that it was 'revised' or 'added to' at all." The court accepted as true plaintiff's testimony that Mr. Elias did not inform him the handbook contained an arbitration clause.

The court concluded it was reasonable for plaintiff to assume the distribution of the handbook was routine, with no particular reason for plaintiff to read it again, so it would be "fundamentally unfair to presume that Plaintiff was aware of the arbitration clause." Having found no mutual assent to arbitrate, the court found it unnecessary to address plaintiff's unconscionability defense to arbitration.

6

Defendants filed a timely appeal from the trial court's order denying their motion to compel arbitration.

## DISCUSSION

Defendants maintain the FAA applies to their agreement, and plaintiff does not contend otherwise. The principles that apply to arbitration under the FAA are well known. An arbitration provision in a contract evidencing a transaction involving commerce is valid and enforceable, except on grounds that exist at law or in equity for the revocation of any contract. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 234-235 (*Pinnacle*).) The FAA preempts state laws that require a judicial forum for claims the parties agreed to resolve by arbitration. (*Pinnacle,* at p. 235.) "Nonetheless, it is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion.'" (*Id.* at p. 236.) "In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration." (*Ibid.*) State contract law in California includes the principle that an arbitration clause within a contract "may be binding on a party even if the party never actually read the clause." (*Ibid.*)

The party seeking arbitration has the burden to prove the existence of an agreement to arbitrate, and the party opposing arbitration must prove any defense, such as unconscionability. Where the evidence is not in conflict, we review the trial court's denial of arbitration de novo. (*Pinnacle, supra,* 55 Cal.4th at p. 236.)

## 1. Mutual Assent

Defendants argue plaintiff demonstrated his assent to the arbitration clause by signing the acknowledgment of receipt of the employee handbook, and his failure to read the handbook

7

before signing the acknowledgment did not render the arbitration clause unenforceable. Plaintiff argues that because defendants did not inform him that an arbitration clause had been added to the employee handbook, he did not consent to that clause.

Mutual assent to enter into a contract " ' "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." ' " (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 381 (*Harris*).) Plaintiff does not deny the authenticity of his signature on the acknowledgment page of the November 2017 employee handbook, although he does not remember signing it. It follows, therefore, that he received the handbook, despite his claims to the contrary. No evidence shows plaintiff was required to sign the acknowledgment without an opportunity to read the handbook first.

Plaintiff relies on *Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, abrogated on other grounds in *Harris, supra,* 248 Cal.App.4th at page 390, citing the case multiple times in his brief and stating the case is "directly on point." *Sparks* held, in relevant part, the plaintiff was not bound to arbitrate because the arbitration clause "was included within a lengthy employee handbook" and "was not called to the attention of plaintiff." (*Sparks,* at p. 1514.) But in 2015, the Supreme Court held that a party seeking to enforce an arbitration agreement in a consumer contract has no duty to point out the arbitration clause, and any state law to that effect would be preempted by the FAA. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914 (*Sanchez*) [the defendant "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [the plaintiff's] attention"].) The *Sanchez* court cited its previous

8

holding in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 424 that "even when a customer is assured it is not necessary to read a standard form contract with an arbitration clause, 'it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it.' " (*Sanchez*, at p. 915.)

Plaintiff insists he was "unaware that his signature on the acknowledgment form was intended to create a contract," and what he signed was not on its face a contract, so that "the holdings of typical contract cases" like *Sanchez* do not apply. That, however, ignores the words on the face of the receipt, in which plaintiff acknowledged the handbook sets forth the terms, conditions, rights, duties, responsibilities and obligations of his employment, and plaintiff expressly agreed he was bound by its provisions. That is a contract. *Sanchez* found "[a]ny state law imposing [an obligation to call attention to an arbitration clause] would be preempted by the FAA." (*Sanchez, supra,* 61 Cal.4th at p. 914.) *Sanchez* did not limit its holding to "typical contract cases" (whatever that may mean) nor say anything suggesting it applied to consumer contracts but not employee contracts.

We follow *Sanchez* in finding defendants had no obligation to point out to plaintiff that an arbitration clause had been added to the November 2017 employee handbook. It has long been the rule in California that a party is bound by a contract even if he did not read the contract before signing it. That rule applies to all contracts, including arbitration agreements. (*Pinnacle, supra,* 55 Cal.4th at p. 236 ["An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."]; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [general rule is one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language]; *24-Hour Fitness,*

9

*Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215; *ibid.*
[" ' "A party cannot use his own lack of diligence to avoid an
arbitration agreement." ' "]; *Brookwood v. Bank of America* (1996)
45 Cal.App.4th 1667, 1674 [reasonable diligence requires reading
of contract before signing].)

Thus, the arbitration clause is binding, unless plaintiff
proves a generally applicable contract defense.

**2.    Unconscionability**

Contract defenses that apply to all contracts, including the
defense of unconscionability, may invalidate arbitration
agreements without contravening the FAA.  Unconscionability
has both procedural and substantive elements.  "The procedural
element addresses the circumstances of contract negotiation and
formation, focusing on oppression or surprise due to unequal
bargaining power. . . .  Substantive unconscionability pertains to
the fairness of an agreement's actual terms and to assessments of
whether they are overly harsh or one-sided." (*Pinnacle, supra,*
55 Cal.4th at p. 246, citations omitted.)

Defendants contend plaintiff did not prove either
procedural or substantive unconscionability.  We disagree, but
conclude the unconscionable portion of the arbitration clause is
severable, and the remainder is enforceable.

" '[C]ontracts of adhesion, although they are indispensable
facts of modern life that are generally enforced [citation], contain
a degree of procedural unconscionability even without any
notable surprises, and "bear within them the clear danger of
oppression and overreaching." ' " (*Baltazar v. Forever 21,
Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)  The
acknowledgment form says the provisions of the handbook are
the nonnegotiable conditions of plaintiff's employment.  In
addition, in the acknowledgment, plaintiff said he understood
"the Company has the right to amend, modify, rescind, delete,

supplement or add to the provisions of this Handbook, as it deems appropriate from time to time in its sole and absolute discretion." We see no basis for requiring plaintiff to present further proof that he could not negotiate the handbook's provisions, or that he had no meaningful choice about its terms. Consequently, there is at least some degree of procedural unconscionability in the agreement.

We agree with defendants that failure to provide plaintiff with a copy of the JAMS rules does not increase the procedural unconscionability of the arbitration agreement. Plaintiff does not claim anything was hidden in those rules. (See *Baltazar, supra,* 62 Cal.4th at p. 1246 [where the plaintiff's challenge to the enforcement of an arbitration agreement has nothing to do with the applicable arbitration rules, the defendant's failure to attach the rules "does not affect our consideration of [the plaintiff's] claims of substantive unconscionability"]; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 249 ["following *Baltazar*, the failure to attach the applicable [American Arbitration Association] rules did not increase the procedural unconscionability of the . . . arbitration provision"].)

That brings us to the substantive unconscionability element. The arbitration clause requires each party to pay a pro rata share of the arbitrator's fees and costs. But an employer that seeks to compel arbitration of an employee's FEHA claims cannot require the employee to pay fees and costs greater than the amount to file a claim in court. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 112 (*Armendariz*) ["We do not believe the FEHA contemplates that employees may be compelled to resolve their antidiscrimination claims in a forum in which they must pay for what is the equivalent of the judge's time and the rental of the courtroom."]; cf. *Torrecillas v. Fitness International, LLC* (2020) 52 Cal.App.5th

11

485, 500 [requiring employee to pay costs equivalent to the costs an employee would have to pay in court complies with *Armendariz*].)

The arbitration clause also provides the arbitrator shall award attorney fees to the prevailing party. But a prevailing defendant in a FEHA case may only recover attorney fees when the plaintiff's action was frivolous, unreasonable or groundless. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985; see also Gov. Code, § 12965, subd. (b).) The attorney fees provision here violates *Armendariz* because it permits prevailing defendants to recover attorney fees even if plaintiff's action was not frivolous, unreasonable or groundless. (See *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 709-710 (*Serpa*) [requiring each party to bear their own attorney fees was unenforceable because it would deprive the employee of an unwaivable statutory remedy available if she prevailed on her FEHA claim]; *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 183 (*Serafin*) [same; "[s]uch a modification of California law is inappropriate under *Armendariz*"].)

### 3. Severance

Plaintiff has not shown that unconscionability so permeates the arbitration clause that the arbitrator's fees and costs and the attorney fees provisions cannot be severed, leaving a fully mutual and enforceable arbitration agreement. This is not a case where we must reform the contract by augmenting it or otherwise rewriting the parties' agreement, which of course we cannot do.

Other courts have severed such provisions and enforced the rest of the arbitration agreement. (See, e.g., *Serafin, supra,* 235 Cal.App.4th at p. 184 [severing provisions requiring both parties to bear their own attorney fees and costs and enforcing balance of arbitration agreement]; *Serpa, supra,* 215 Cal.App.4th at p. 710 [attorney fees provision severed as it is "plainly

12

collateral to the main purpose of the contract," and remainder of arbitration agreement enforced]; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 92 [reversing denial of petition to compel arbitration and remanding with instructions to consider severing arbitration costs provision and enforcing the balance of the agreement; the central purpose of the arbitration agreement "was not to regulate costs, but to provide a mechanism to resolve disputes [and] [b]ecause the costs provision is collateral to that purpose, severance was available" (citation omitted)].)

**DISPOSITION**

The order denying defendants' motion to compel arbitration is reversed. On remand, the trial court is directed to sever the offending provisions concerning arbitration fees and costs and attorney fees from the agreement and otherwise grant the motion to compel arbitration. Defendants shall recover costs of appeal.


GRIMES, J.


WE CONCUR:


BIGELOW, P. J.


WILEY, J.


13